CHARLES S. PULLEN *vs.* LEMUEL MONK,

WILLIAM McKENZIE, and another, trustees,
and
WILLIAM PAINE, claimant.

Piscataquis.     Opinion February 22, 1890.

*Trustee process.   Wages.   Commorant.   Assignment.   Record.   Plantation*
*clerk.   Judgment lien.   R. S., c. 111, § 6.*

An assignment of wages, in order to give the assignee a priority over attachments, must be recorded in the organized plantation in which the assignor is commorant while earning such wages, although he may have a legal residence in some other place.

A man may be a resident in one place and a commorant in another, at the same time.

The legislature used the term "commorant," in R. S., c. 111, § 6, in the sense of a temporary abiding place, to avoid the difficulty of ascertaining the legal residence of a great mass of laboring men; and because many of that class of people have no legal residence within the state.

The unexplained temporary absence of a plantation clerk does not effect the disorganization of the plantation.

Where it appears by the account annexed to a writ in a trustee suit and made a part of the case submitted on report for decision of the law court, that necessaries were furnished the defendant exceeding the amount attached; *Held*, that a few articles in the account which are not necessaries do not establish an exemption from trustee process as to such articles as are necessaries. It is not a case where a lien is lost by mixing, in a judgment, lien and non-lien claims together.

Of the assignment of wages earned, or to be earned.

The case of *Wright* v. *Smith*, 74 Maine, 495, distinguished.


AGREED STATEMENT.

This was a trustee suit in which the liability of the trustees was submitted to the decision of the law court. The facts appear in the opinion.

*J. F. Sprague*, for plaintiff.

Counsel cited: R. S., c. 111, § 6; c. 3, § 77; private and special laws of Maine, 1887, c. 178. *Augur* v. *Couture*, 68

Maine, 428; *Stinson* v. *Caswell*, 71 Maine, 512; *Wade* v. *Bessey*, 76 Maine, 414; Rapalje's Law Dictionary, p. 245; *Ames* v. *Winsor*, 19 Pick. 248; *Abington* v. *No. Bridgwater*, 23 Pick. 170.

*E. Flint*, for claimant.

Assignment valid: *Emerson* v. *R. R.*, 67 Maine, 392; *Wade* v. *Bessey*, 76 Id. 413; *Hartley* v. *Tapley*, 2 Gray, 566; *Emery* v. *Lawrence*, 8 Cush. 151.

"Commorant" does not apply to a laborer doing work in a plantation, though it adjoins the town of his residence. He could not be regarded a commorant of the plantation more than a portion of his time, and not the whole; hence his commorancy is in the town of his residence as well as in the plantation where he labors; and statute does not apply.

The term commorant as used in the statute cited, applies to a laborer whose residence is unknown, or so uncertain as to create a doubt as to where it may be, or where the distance from his place of residence is such as to render it impracticable for him to visit such place during the time of performing his labor. The term does not.apply to a laborer as designating him a commorant of a plantation while performing work therein, if his well known and undisputed residence is so near the place where his labor is performed that he visits his home and family weekly, remaining over Sundays.

If the fact of performing labor in an incorporated plantation makes the laborer a commorant therein, he must be so considered, though he should have his whole board and lodging at his own home in an adjoining town of his known and undisputed residence.

The writ is for the balance of account, and shows no evidence that it is for the recovery of necessaries for the defendant or his family.

While a large portion of the items in the bill of particulars evidently could not have been for necessaries, some of the items indicate articles which would be necessaries if proved to be for the use of the defendant or his family; but whether such articles were for such use or for the use of some employe of the defendant, or for supplies carried to a lumbering camp is left in doubt,

and at least is uncertain. Though the plaintiff claims that his account is in part for necessaries for the defendant and his family, the remaining portion of it evidently is not for such necessaries; and the whole having been sued in one writ, the whole account must be regarded as if no part was for necessaries so far as relates to attachment by trustee process. That portion of his account for necessaries, the collection of which could not be defeated by trustee process, must be regarded superior to that portion subject to that process. The lien of a laborer is defeated if the judgment recovered includes non-lien claims. *Reed* v. *Woodman*, 4 Maine, 400 ; *Quimby* v. *Dill*, 40 Id. 528; *Holmes* v. *Farris*, 63 Id. 318.

PETERS, C. J. In this (trustee) action, the question is whether the funds, admitted to be in the trustees' hands, shall be held by the plaintiff's attachment, or go to the claimant by force of an assignment to him from the principal defendant.

The funds consist of an amount due the defendant as wages for working by the month, in the plantation of Elliotsville, with a steam drill, under contractors who were constructing the Canadian Pacific railroad; the defendant working in that capacity continuously from the spring of 1887, for a year and more. His legal residence during that time was in the town of Monson where his homestead and family were, but he lived all the time in camp in Elliotsville during the period of his working there, excepting that on most of the Sundays, not all of them, he visited his home in Monson, going there on Saturday afternoon and returning to Elliotsville on the afternoon of Sunday.

Process was served on the trustees March 15, 1888. The written assignment from defendant to claimant is dated August 27, 1887, was recorded in the town records of Monson, August 29, 1887, and in Elliotsville, March 30, 1888.

The railroad workmen received their pay as made out on monthly-roll bills, and the trustees disclose $59.50 due the defendant on the February (1888) rolls, and $30.95 due on the March (1888) rolls up to March 15th.

It will be observed that the assignment to claimant was seasonably recorded to obtain priority over the attachment, if Monson

was the proper place, and too late for priority if Elliotsville was the proper place, for recording the assignment. The evidence establishes the fact that Elliotsville was an organized plantation.

The statute relied on by the plaintiff as governing the question (R. S., c. 111, § 6), reads as follows: "No assignment of wages is valid against any other person than the parties thereto, unless such assignment is recorded by the clerk of the city, town or plantation organized for any purpose in which the assignor is commorant, while earning such wages."

Was the defendant, Lemuel Monk, commorant in Elliotsville while working there in February and March 1888? We can see no escape from the conclusion that he was. It cannot be doubted that a man may be a resident in one place and commorant in another at the same time. The distinction is between a permanent and a temporary home. *Ames* v. *Winsor*, 19 Pick. 248. A commorancy may be all the residence a man has, but usually it is not. In Webster's dictionary, commorancy is defined as meaning, in American law, "residence temporarily, or for a short time." The term, from its derivation from the Latin, implies something less than a regular residence, such as a staying, a sojourning, and more literally, a tarrying. It was to express these minor degrees of residence that the word got in vogue in our jurisprudence, though not often used. Blackstone says in his commentaries, vol. 4, p. 273, that all freeholders within the precinct of Court Leet, "as well as all persons commorant there, which commorancy consists in usually lying there," were obliged to attend the sessions of that court. We think the legislature used the term commorant in the sense of a temporary abiding place, to avoid the difficulty of ascertaining the legal residence of a great mass of laboring men, and because many of that class of people have no legal residence within the state. But the law must be general in its application. It was immaterial that the debtor in this case had a legal and well defined home in Monson, as he was as much commorant in Elliotsville as were the hundreds of laborers associated in the same employment. The record should have been made there.

It is contended for the claimant that the assignment, though

not seasonably recorded, should be upheld, because for a period of three months, from January 1, till April 1, 1888, the clerk was away from the plantation, and there was no one there to receive and record the assignment. Upon that ground, it is denied that there was an organized plantation during those three months. There is no suggestion that the assignment could not have been recorded at any time after its date, in August 1887, up to January 1, 1888, nor are we informed where the clerk was whilst absent, nor what efforts were made to reach him, but it appears that somehow a recording of the assignment was effected March 30, 1888. We think this position does not give relief to the claimant.

It is further contended that the claimant had also a verbal assignment, of a date earlier than the attachment, of that portion of the wages of the defendant which were earned in February, and that the statute requirement does not extend to that amount of the wages. The position taken is that the February wages were fully earned. In *Wright* v. *Smith*, 74 Maine, 495, it was held that the statute did not apply to a case where the work had been completed and the wages fully earned. The laborer was then no longer at work. But in the present case, though the wages for February were payable at the end of February, still it was a continuing employment and the engagement was not ended. We should be afraid that the distinction called for, if allowed to prevail, would make the statute uncertain in its operation, depriving it of much or most of its useful effect.

It is objected that the wages were not due when attached. But the disclosure admits that they were due, though not payable until a later day.

It is contended that the trustee can retain twenty dollars of the wages as exempted from attachment, because it does not appear that the articles sued for were necessaries furnished the defendant and his family. The learned counsel for the defense, has overlooked a statement in the beginning of the report: "This is an action for articles furnished the defendant and his family, as more fully appears by the plaintiff's writ, to be copied." The writ seems to be submitted to the court for inspection, to

enable it to see that the articles thus furnished were necessaries. By the account annexed to the writ, it appears that there is an amount furnished as necessaries exceeding the amount of wages attached. The few articles in the account which were not necessaries do not establish an exemption as to such articles as were necessary. The cases cited, where a lien is lost by mixing lien-claims and non-lien claims together, do not apply. Those were cases of judgments, where the unprivileged claim can no longer be identified, and is drowned in the common mass. Here the identification is not lost, and a separation of the items can be made, a matter to be settled before and not after judgment. The true question is whether in the account as it stands, and no objection is made to any of the items, the plaintiff is entitled to recover for an amount of necessaries, sufficient to absorb the funds attached.

*Trustees charged.*

VIRGIN, LIBBEY, EMERY and FOSTER, JJ., concurred.